## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF MAINE

| | |
|---|---|
| KEVIN CUTWAY, Plaintiff, <br><br> v. <br><br> THE HARTFORD LIFE AND ACCIDENT INSURANCE COMPANY, Defendant. | Case No. 2:22-cv-0113-LEW <br><br> DEFENDANT'S OPPOSITION TO PLAINTIFF'S MOTION FOR TRO OR PRELIMINARY INJUNCTION |

Defendant Hartford Life and Accident Company ("Hartford") opposes Plaintiff's Motion for Temporary Restraining Order or Preliminary Injunction ("Motion"), ECF Doc. #18.

This case is a dispute over allegedly-due long-term disability ("LTD") benefits governed by the Employee Retirement Income Security Act of 1974 ("ERISA"). When Hartford first approved LTD benefits, Plaintiff provided a Notice of Award letter from the Social Security Administration ("SSA") that said Plaintiff's Social Security Disability Insurance ("SSDI") benefits totaled $49 per month. Hartford repeatedly questioned the accuracy of the SSA documents. When a later SSA document showed an SSDI benefit increase to $74 per month, Plaintiff's lawyer argued that the correct LTD benefit offset was still $49.

By the time Hartford discovered that Plaintiff was actually receiving SSDI benefits of $1,587 per month, Hartford had overpaid Plaintiff by more than $52,000. In accordance with the terms of the group insurance policy that funds the plan ("Group Policy"), the terms of a Reimbursement Agreement Plaintiff signed, and multiple warnings that an overpayment might occur, Hartford requested reimbursement. When Plaintiff refused, Hartford—again in accordance with the terms of the Group Policy—began withholding monthly LTD benefit payments to recover the overpaid amount.

Hartford is obligated by its fiduciary duties to recover the overpaid benefits, and the Group Policy expressly authorizes Hartford to do so by withholding monthly LTD benefits. Plaintiff's claims in this action are meritless, and he cannot establish the four factors required for the extraordinary pre-judgment relief he seeks.

## Factual Background

**Relevant Group Policy Provisions.**  Under the Group Policy, Plaintiff at all times bore the burden to prove that he remained continuously disabled.  *See*, *e.g.*, HART2573.[1]  The policy's "Proof of Loss" provisions require that he periodically provide information concerning all current income sources, *see* HART2573, because LTD benefits are calculated by multiplying pre-disability earnings by a set benefit percentage and then subtracting Other Income Benefits ("OIB"), which are defined in the Group Policy to include SSDI benefits.  HART2569; *see also*, *e.g.*, HART2578.

Thus, where, for example, a claimant receives SSDI benefits, this might result in an overpayment of LTD benefits.  As relevant here, the Group Policy expressly provides that Hartford has the right to recover such overpayments, whether they are the result of "retroactive awards," a claimant's "failure to report," any "misstatement," or even "any error [Hartford] may make."  HART2575.  If an overpayment, whatever its cause, is not repaid within thirty days, Hartford also has "the right to . . . reduce or offset against any future benefits payable . . . until full reimbursement is made."  HART2575; *see also*, *e.g.*, HART2569.

The Group Policy also contains an express anti-waiver provision, HART2710, and a broad grant of discretionary authority.  *See* HART2588.

---

[1] In this Opposition, Hartford cites directly to the Administrative Record, which is Bates Numbered HART0001 through HART2712.  The Administrative Record was filed with the Court on August 17, 2022.  *See* ECF Docs. #21 through #23.

**Reimbursement Agreement and Requests for Information.**  Upon applying for LTD benefits, Plaintiff signed a Reimbursement Agreement, dated October 26, 2016, where he agreed:

> Please pay me my monthly Long Term Disability benefit with no reduction for Social Security Benefits.  I understand that this may result in an overpayment of my LTD benefits which I will be required to refund to The Hartford in a lump sum.

HART2540.  Following its benefits approval, Hartford repeatedly warned Plaintiff that, based on his selection, he might be required to repay a "sizable overpayment."  HART1100; *see also*, *e.g.*, HART1080.  In a telephone interview on May 16, 2017, the Plaintiff told Hartford that he stopped receiving WC benefits but had applied for SSDI.  HART2001.  As such, Hartford continued paying Plaintiff full monthly LTD benefits without any offsets, but Hartford periodically requested that Plaintiff provide SSDI status updates.  *See*, *e.g.*, HART1043; HART1015; HART1004.  In a series of follow-up phone calls with Hartford, Plaintiff discussed his subsequent award of SSDI benefits, the possibility of an overpayment, and his need to work out a payment plan.  *See* HART0763–70.

**Plaintiff's Submission of Inaccurate Social Security Information.**  On April 18, 2019, Plaintiff completed a Claimant Questionnaire, on which he indicated that his SSDI benefits were $1,587 per month.  HART1793.  However, on the following day, Plaintiff emailed Hartford:

- A screen-shot of an SSA webpage, dated January 10, 2019, which states, "A decision has been made on your Disability benefit application."  It shows Plaintiff received a $1,587 SSDI payment on February 27, 2019, and a "One-Time Payment" of $1,538 on March 8, 2019, but that he would thereafter receive SSDI benefits of $49 a month.  HART1774–77.

- A Notice of Award ("NOA") letter, dated January 15, 2019, that says, "You will receive $1,587.00 for January 2019.  After that you will receive $49.00 on or about the fourth Wednesday of each month."  HART1195.  The letter indicates SSDI benefits were reduced due to Plaintiff's WC benefits.

3

- A letter from SSA, dated March 15, 2019, that says, "We changed your monthly benefit to $1,587.20 as of February 2019. We found that your prior amount was incorrect." HART1780.

- A letter from SSA, dated April 17, 2019, that says, "Beginning January 2019, the full monthly Social Security benefits before any deductions is $1,587.20." The letter makes no mention of WC benefits. HART1787.

- A screen-shot of an SSA webpage, dated April 19, 2019, that says, "Beginning January 2019, the full monthly Social Security benefits before any deductions is $1,587.20." The screen-shot makes no mention of WC benefits. HART1767.

On April 25, 2019, Hartford re-calculated the amount of Plaintiff's LTD benefits to reflect Hartford's belief, based on the confusing documents received, that Plaintiff's SSDI benefit, going forward, would be only $49 per month. *See* HART0761. On May 20, 2019, there was a "milestone call" between Hartford and the Plaintiff. *See* HART0760. The claim notes show that Hartford raised the benefit amount issue and asked Plaintiff for an explanation:

> [Plaintiff] is really unclear [because] he thought he was getting $1587 per the letter, and has no idea what WC-offset NOA mentioned. . . . [Plaintiff] [will] check with [his specialist], check bank records, and contact SSA re: offset. [Plaintiff] upset [because the SSA] already made errors by 1 year exactly on the [date of disability], so he was not paid a large retroactive sum, and feels SSA has done a poor job - now this mistake by them. [Plaintiff] will dig and find out what is going on . . .

HART0760. However, Plaintiff did not thereafter follow up with Hartford.

**Appeal and Overturn on Medical Issues.** Relying on surveillance reports, Hartford temporarily suspended LTD benefits on February 13, 2020. *See* HART0958. On appeal, Hartford overturned its decision and reinstated LTD benefits on August 4, 2020. *See* HART0946.

**Post-Appeal Requests for Information.** Hartford wrote on August 11, 2020, to request confirmation of any SSDI cost of living adjustments ("COLAs"), so that it could calculate Plaintiff's correct LTD benefit amount. HART0945. Plaintiff's Attorney, Andrew Davis,

responded that COLA adjustments should not be offset against LTD benefits. HART0944. Hartford agreed, but said it needed the information to reconcile the benefit calculations and "ensure that the claim file remains financially accurate." HART0943. Receiving no further response, Hartford renewed its request on September 10, 2020. HART0653. Rather than provide the over-due information, Attorney Davis responded with a request for Hartford to buy-out Plaintiff's claim. *See* HART1223. Hartford declined. HART0652–53.

Then, on October 19, 2020, Attorney Davis sent an SSA letter, dated August 21, 2020, that said, "Beginning December 2019, the regular monthly Social Security payment is $74.00." HART1219–20; *see also* HART652. Based on this new SSA letter, Hartford calculated that Plaintiff had been overpaid by a total $250. HART937. Attorney Davis disputed that calculation on the grounds that the increase to $74 was merely a "COLA increase," and thus the proper offset amount remained $49 per month. HART0636. Hartford accepted Attorney Davis's argument, and sent him an email on December 8, 2020, which said: "The claim has been adjusted to remain at a $49.00/Month offset for [SSDI], and resulted in a $25.00 underpayment, which will be administered to your client." HART0633.

**Hartford's Correction of the SSDI Offset Amount.** On March 5, 2021, Hartford requested that Plaintiff provide an SSDI Benefit Verification Letter. HART0935. A subsequent claim note on April 27, 2021, appears to recognize that there was something wrong with SSA's treatment of Plaintiff' purported WC offset. *See* HART0631. As the note explains, Plaintiff settled his WC claim in 2017, but that settlement "does not correlate" to SSA's January 15, 2019 NOA letter, which says Plaintiff's SSDI award was reduced to $49 due to WC benefits. HART0631. The note concluded: "If [Plaintiff] is no longer receiving W/C benefits, it is incumbent upon [him] to notify the SSA." HART0631.

5

On September 17, 2021, Hartford sent an email to Attorney Davis asking for an explanation of the WC discrepancy. *See* HART0624. Receiving no response, Hartford followed up with additional requests on October 22, 2021, and again on December 8, 2021. *See* HART0929; HART0924. Attorney Davis told Hartford on December 8, 2021, that Hartford should already have all the documents it needs. HART0621.

In light of that response, Hartford reviewed the file on December 9, 2021, and concluded that SSA's prior statements must have been in error. *See* HART0620. Hartford recalculated LTD benefits in accordance with what it determined to be the correct SSDI benefit amount—$1,587 per month. On December 15, 2021, Hartford sent Plaintiff notice of the resulting $52,292 overpayment. *See* HART0916. Hartford explained its new calculation and requested repayment per the Group Policy. *See* HART0916. Hartford sent a second notice on February 3, 2022. HART0914.

**Appeal of Benefits Calculation.** On February 28, 2022, Attorney Davis appealed. *See* HART1175. He alleged that Hartford "violated its fiduciary obligations" by failing for years to offset the proper SSDI amount—*i.e.*, by offsetting too little and paying Plaintiff far more than he was actually owed. HART1175.

On April 12, 2022, after a full and fair review, Hartford's Appeal Specialist upheld the determination. She reasoned that even if the delayed notice resulted from Hartford's own error, Plaintiff was still required to repay the overpaid benefits. *See* HART0904. The Appeal Specialist wrote: "The Policy dictates that overpayments can occur due to 'any error We may make' and that 'We have the right to recover from You any amount We determine to be an overpayment.'" HART0906 (quoting Group Policy at HART2575).

**Legal Argument**

"The standard for issuing a temporary restraining order is the same as for a preliminary injunction, and is provided by traditional equity doctrines." Bourgoin v. Sebelius, 928 F. Supp. 2d 258, 267 (D. Me. 2013). Both represent "extraordinary and drastic" remedies that are "never awarded as of right." Id. (quoting Peoples Federal Savings Bank v. People's United Bank, 672 F.3d 1, 8–9 (1st Cir. 2012)). To grant such equitable relief, Plaintiff must demonstrate that:

    (1) he is likely to succeed on the merits;

    (2) there is a significant risk of irreparable harm if the injunction is withheld;

    (3) the balance of the equities favors the issuance of an injunction; and

    (4) the requested relief will not harm the public interest.

See NuVasive, Inc. v. Day, 954 F.3d 439, 443 (1st Cir. 2020); Nieves-Márquez v. Puerto Rico, 353 F.3d 108, 120 (1st Cir. 2003). The party seeking injunctive relief necessarily "bears the burden of demonstrating that these four factors weigh in [his] favor." Esso Standard Oil Co. v. Monroig-Zayas, 445 F.3d 13, 18 (1st Cir. 2006).

**Likelihood of Success.** Plaintiff cannot show that he is likely to prevail on the merits. Fiduciary status under ERISA is a functional inquiry,[2] and calculating benefit offsets is a ministerial task and not a discretionary, fiduciary function. See Livick v. The Gillette Co., 524 F.3d 24, 29 (1st Cir. 2008). Thus, here, there is no fiduciary breach in the first place.

Plaintiff cites a series of Ninth Circuit cases, but the applicable law in this circuit is set forth in Watson v. Deaconess Waltham Hosp., 298 F.3d 102 (1st Cir. 2002). There, the Court

---

[2] The fiduciary duty arising under ERISA does not "favor payment over nonpayment," but rather compels an "impartial account of the interest of all beneficiaries" and "recognizes the need to preserve assets to satisfy future, as well as present, claims." Varity Corp. v. Howe, 516 U.S. 489, 514 (1996); see also, e.g., Conkright v. Frommert, 559 U.S. 506, 520 (2010).

explained that a fiduciary duty "only arises if there was some particular reason that the fiduciary should have known that his failure to convey the information would be harmful," and emphasized that ERISA fiduciaries need not provide "individualized unsolicited advice." Id. at 114–15. Here, Hartford did not withhold any material information from Plaintiff.

Rather, it was Plaintiff and his counsel, not Hartford, who had direct access to the financial information necessary to correctly calculate the offset. The January 15, 2019 SSA Notice of Award that Plaintiff initially furnished to Hartford was inaccurate. See HART01195. Hartford questioned the conflicting numbers, see HART0760, and Hartford repeatedly asked for clarification. See, e.g., HART0945; HART0653. On October 19, 2020, Plaintiff's counsel provided another inaccurate SSA letter and argued that only $49 per month should be offset. See HART1219–20; HART0652. Relying to its detriment, Hartford made additional payments based on counsel's representations. At worst, Hartford took longer than it might have to determine the correct offset, but the blame, if any, lies at least in part with the SSA and Plaintiff's lawyer.³

Plaintiff's waiver claim entirely fails.⁴ Plaintiff provides no evidence that Hartford knowingly or intentionally relinquished anything. Hartford had no actual knowledge of the

---

³ There is no law that ERISA's fiduciary requirements impose strict liability for calculation errors, not even in the Ninth Circuit. See, e.g., Morris v. Aetna Life Ins. Co., 2021 WL 3509553 at *5 (C.D. Cal. Aug. 9, 2021) ("The alleged breach of fiduciary duties—resulting from the miscalculation, the repeated affirmation of the miscalculation, and the failure to audit to catch miscalculations—all are inextricably intertwined with the calculation of benefits, which is a ministerial function that does not have a fiduciary duty attached to it.") (internal quote and alterations omitted); Huerta v. AT&T Umbrella Plan, 2012 WL 6569369 at *6 (N.D. Cal. Dec. 12, 2012) ("Failing to inform [claimant] about the overpayment for almost one year is not a misrepresentation; it is an oversight. [The administrator] never misrepresented to [claimant] that despite having received a retroactive SSDI award, [the administrator] did not intend to collect.").

⁴ "Waiver is famously defined as 'an intentional relinquishment or abandonment of a known right or privilege.'" Ruiz v. Bally Total Fitness Holding Corp., 496 F.3d 1, 10 (1st Cir. 2007) (quoting Johnson v. Zerbst, 304 U.S. 458, 464 (1938)).

correct SSDI offset until December 2021, when it demanded repayment, *see* HART0916, and thus it could not have intentionally relinquished its right to collect the overpayment. *See*, *e.g.*, Shields v. United of Omaha Life Ins. Co., 527 F. Supp. 3d 22, 34 (D. Me. 2021).

Burger v. Life Ins. Co. of N. America, 103 F. Supp. 2d 1344 (N.D. Ga. 2000), is not on point. Here, the Group Policy expressly provides that even if an overpayment results from Hartford's own mistake, Hartford is nevertheless entitled to withhold benefits until it has fully recovered the overpayment. *See* HART2575; HART2569. Unlike Burger, the Group Policy also contains an express provision that says, "To be valid, any change or waiver must be in writing, approved by one of [Hartford's] officers and made a part of the [Group] Policy." HART2710. *See*, *e.g.*, Huerta, 2012 WL 6569369 at *5 (distinguishing Burger, rejecting claimant's waiver arguments, and noting that "the specific terms of the Disability Plan preclude such a waiver").[5]

Moreover, the facts in Burger are distinguishable. In light of Attorney Davis's submission of the August 21, 2020 SSA letter and his concomitant argument that the correct offset was only $49 a month, it is actually Hartford, and not Plaintiff, who is entitled to invoke equitable principles.

**Irreparable Harm.** An irreparable injury is one which "cannot adequately be compensated for either by a later-issued permanent injunction, after a full adjudication on the merits, or by a later-issued damages remedy." Rio Grande Cmty. Health Ctr., Inc. v. Rullan, 397 F.3d 56, 76 (1st Cir. 2005). In general, economic harms "do not rise to the level of being

---

[5] Particularly in the ERISA context, this Court must enforce the clear and unambiguous terms of the Group Policy as written. *See*, *e.g.*, Heimeshoff v. Hartford Life & Accident Ins. Co., 571 U.S. 99, 108 (2013); US Airways, Inc. v. McCutchen, 569 U.S. 88, 101 (2013); *see also*, *e.g.*, Guerra-Delgado v. Popular, Inc., 744 F.3d 776, 782 (1st Cir. 2014) (ERISA plans cannot be orally modified because, statutorily, they must be "established and maintained pursuant to a written instrument," and thus, "it would be inherently unreasonable to rely on an oral statement purporting to modify the plan").

irreparable" because "traditional economic damages can be remedied by compensatory awards." NACM-New England, Inc., v. Nat'l Ass'n of Credit Mgmt., Inc., 927 F.3d 1, 5 (1st Cir. 2019). "The possibility that adequate compensatory or other corrective relief will be available at a later date, in the ordinary course of litigation, weighs heavily against a claim of irreparable harm." Sampson v. Murray, 415 U.S. 61, 90 (1974) (internal quotation omitted).

Here, Plaintiff's allegations fail to show irreparable harm because he has alleged only speculative economic injury. If, for example, Plaintiff were to prevail following this Court's full review of Hartford's determination, he could obtain re-payment of the allegedly wrongfully withheld benefits and potentially recover attorney's fees, costs, and pre-judgment interest. See, e.g., 29 U.S.C. §§ 1139(a)(1)(B) and (g).

**Balance of the Equities.** Plaintiff compares Hartford's financial strength to the alleged precariousness of his own financial position. See Pl.'s Mot. at 7 (ECF Doc. #18). But such facts, if assumed true, actually weigh against the injunction Plaintiff seeks. If Plaintiff's financial situation is truly as dire as he claims, it is unlikely that he would be able to satisfy an adverse judgement, thereby leaving Hartford as the party without a legal remedy.

**Public Interest.** Here, the public interest, to the extent relevant, is to protect plan assets, for the benefit of all present and future beneficiaries, Varity, 516 U.S. at 514, and preserve the "careful balancing" that Congress sought to achieve by enforcing the terms of the Group Policy as written. See, e.g., Aetna Health Inc. v. Davila, 542 U.S. 200, 208 (2004).

## Conclusion

For the foregoing reasons, Plaintiff has not established any of the factors necessary for the injunctive relief he seeks. The Court must deny his motion.

Dated: August 19, 2022                   Respectfully Submitted,
                                         /s/ Byrne J. Decker

        Byrne J. Decker
        OGLETREE, DEAKINS, NASH, SMOAK &
        STEWART, P.C.
        2 Monument Square, 7th Floor
        Portland, ME 04101
        Telephone:  207-387-2983
        Facsimile:  207-387-2986
        Email:  byrne.decker@ogletree.com

        *Attorneys for Defendant*
        *Hartford Life and Accident Insurance*
        *Company*

## CERTIFICATE OF SERVICE

I certify that on August 19, 2022, I caused the foregoing document to be electronically filed through the Court's CM/ECF system and that this document is available for viewing and downloading from the Court's CM/ECF system.  All counsel of record have been served by electronic means.

        Andrew S. Davis, Esq.
        Davis Law, LLC
        P.O. Box 17887
        Portland, ME 04101
        andrew@erisabenefitlawyer.com

        /s/ Byrne J. Decker
        Byrne J. Decker