UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MAINE

| | |
|---|---|
| Kevin Cutway | Case No.: 2:22-CV-0113 |
| Plaintiff | PLAINTIFF'S REPY TO DEFENDANT'S OPPOSITION TO MOTION FOR TEMPORARY RESTRAINING ORDER OR A PRELIMINARY INJUNCTION |
| v. | |
| The Hartford Life & Accident Company | |
| Defendant | |

Plaintiff, Kevin Cutway, for his Reply to Defendant's Opposition ("Opposition") to Motion for a Temporary Restraining Order or Preliminary Injunction ("Motion") against Defendant The Hartford Life and Accident Company ("Hartford") states as follows:

1. Defendant's Opposition confirms it had the basic information outlining Mr. Cutway's correct benefit from the Social Security Administration ("SSA") since 2019. Further, Hartford knew Mr. Cutway's workers' compensation benefits ceased in 2017, almost two years before he received SSA benefits and approximately a year before his date of disability as determined by the SSA. Accordingly, Hartford knew or should have known Mr. Cutway received the total benefit of $1,587 from the SSA (as repeatedly advised by Mr. Cutway) and should have instituted an offset in that amount in 2019. Rather, Hartford waited approximately three years to claim overpayment, causing Mr. Cutway to suffer a substantial overpayment to his great financial detriment. Given its delay, Hartford waived its right to recoup the overpayment.[1]

---

[1] To be clear, Mr. Cutway does not maintain that his benefit should not be reduced by $1,587 moving forward. This is the proper offset moving forward. Rather, Mr. Cutway argues that Hartford's failure to act on information it requested and Mr. Cutway provided in 2019 caused Mr. Cutway to rely that he received the proper benefit to his great detriment. Accordingly the +$52,000 overpayment should be waive and refunded as applicable.

2.      Hartford's proposed administrative record is replete with notations indicating Hartford knew Mr. Cutway's benefits from the SSA was $1,587 in 2019.  See e.g., claim notes October 26, 2020 HART 651, claim note May 20, 2019, HART758, claim note May 20, 2019 HART 760, claim note April 25, 2019, HART761,

3.      Indeed, Mr. Cutway provided Hartford with a notice from the SSA with screenshots explicitly and unequivocally stating "[t]he regular monthly Social Security payment is $1,587.00" beginning January 2019.  HART1768.

4.      Hartford complains that a notice indicated the monthly benefit for February 2019 was $49.  However, notices provided by Mr. Cutway indicated that as of "April 24, 2019" his payment was again "$1,587.00."  HART1776. Indeed, multiple notices provided in April 2019 indicated the monthly benefit had returned to $1,587.00. HART1776, 1787.

5.      Moreover, Mr. Cutway completed multiple claimant questionnaires that indicated his monthly benefit, as of April 2019, was $1,587. See e.g., HART1154, 1166, 1793

6.      In November 2020, Harford noted full amounts received from the SSA with COLA adjustments.  HART634.  For an unexplained reason, Hartford miscalculated the net amount of a COLA increase of $25.  HART636.

7.      Mr. Cutway also provided Hartford with multiple releases that provided Hartford full access to any file maintained by the SSA. HART977, 981, 984, 987, 990, 993, 996, 1007, 1012, 1014, 1017, 1019, 1022, 1051, 1056, 1059, 1560, 1801.  Indeed, these releases state that "I [Kevin Cutway] allow all doctors, hospitals, other health care providers, pharmacy, pharmacy benefit managers, government agencies (including, but not limited to, Federal, State or Local, ***and the Social Security Administration*** … to give to and discuss with the Hartford [all pertinent information requested]." HART1559, authorization signed on April 19, 2019 (emphasis added).

8. In 2021, upper management at Hartford seemed to recognize their mistake and began frantically requesting documents concerning WC settlements in 2017 – information they could have and should have requested 3-4 years prior. HART622-626.

9. In April 2021, Beth Lamb noted that "If EE is no longer receiving w/c, it is unclear why initial PSSD offset has been re-instated since this would no longer be reduced by EE's w/c income. – Most recent BVL received, effective December 2019 confirms current award amount." HART628.

10. On September 17, 2021, Heycha Marin sent the following inquiry: "If claimant was no longer receiving WC benefits, it is incumbent upon the claimant to notify the SSA. After a reasonable period of time (1-2 months), we should re-instate the full initial PSSD offset amount of $1,587.00. It is noted that Mr. Cutway settled his WC claim in 2017, but this does not correlate with the fact that the SSA was reducing the claimant's benefits in 2019." HART624-625. Again, this is information Mr. Cutway provided in 2018-2019.

11. On December 8, 2021, we informed Hartford it had the WC and SSA documentation. Review of the file indicated that Hartford did, in fact, have the information but had not offset the benefit properly. HART621 ("Attny also notes they have provided the WC/SSD docs req in the past. Below is an outline of the docs we do have. We do have doc showing SSD was changed eff 2/2019 back to $1587.00 gross. Will refer to OVP to correct as should have been offsetting $1587.00 from 1/1/2019 and ongoing."). The benefit specialist then goes on to outline the four separate documents Plaintiff provided Hartford indicating his gross benefit returned to $1587.00 per month effective February 2019. HART621.

12. In its Opposition, Hartford attempts to create confusion and suggests the undersigned counsel and Mr. Cutway misled Hartford and provided notices that did the same.

Hartford failed to mention, however, that in 2017 Hartford terminated Mr. Cutway's claim for failure to provide what it believed to be sufficient information in response to its many requests. Accordingly, Mr. Cutway, who Hartford agrees is totally disabled, remained understandably paranoid that his claim would be terminated on a technicality and provided Hartford with every piece of paper from the SSA and his doctors. Kevin Cutway Affirmation, dated August 23, 2022, ("Cutway Aff."), ¶3.

13. In its opposition Hartford maintained Burger is "not on point." Doc. No. 24, p. 9. Specifically, Hartford maintained the policy in Burger does not contain an "anti-waiver provision." Id. If adopted, Hartford's argument would permit administrators to violate their fiduciary obligations without recourse if the plan at issue contained an anti-waiver provision. An administrator cannot contractually discharge its fiduciary obligations to plan participants. Such a rigid interpretation would negate ERISA's catch-all enforcement provision 29 USC §1132(a)(3). See Dandurand v. Unum Life Ins. Co. of Am., 150 F. Supp. 2d 178, 186 (D. Me. 2001) ("[e]quity, after all, is meant to be flexible").

14. In Dandurand, Unum, on four separate occasions, miscalculated benefits owed to a participant. Dandurand, 150 F. Supp. 2d at 186. The court agreed that a mistake, as alleged by Hartford in this case, does not preclude restitution. Id. The court determined that Unum was culpable as it failed, for almost four years, to properly calculate benefits. Id. The court further found that capability was a significant factor weighing against restitution to Unum. Id. Specifically, the Court stated as follows: "The Court does not believe that it would be equitable to make Dandurand bear the weight of an error that Unum could have prevented by closer supervision, better training, or a consistent interpretation of the Policy." Id.

15. The same equitable principles deployed by the Dandurand court apply here.

16. This case is not about strict liability as claimed by Hartford, it is about requiring a plan fiduciary, Hartford, to administer a claim in the interest of a participant. As outlined in our initial Motion, Mr. Cutway provided Hartford with every document from the SSA concerning the benefit amounts. Mr. Cutway worked hard to get the workers compensation offset corrected and then provided the updated information to Hartford multiple times. Hartford negligently sat on this information for almost three years, leading Mr. Cutway, someone unfamiliar with the administration of benefits, to believe that he was receiving the correct monthly benefit from both the SSA and Hartford. Accordingly, Mr. Cutway planned his life and budget around these amounts only to learn, three years later, that he owed Hartford more than $52,000 and was only entitled to a greatly reduced benefit.

17. Hartford evidenced a lack of understanding of waiver in its Opposition. It maintained that it did not knowingly or intentionally relinquish its right to the overpayment. Of course it did not intentionally give up +$52,000. Rather, it neglected its obligation to administer benefits according to its fiduciary obligations, thereby waiving its right to claim, three years after it should have known Mr. Cutway's correct offset, to collect an alleged overpayment.

WHEREFORE, Plaintiff, Mr. Cutway, requests the Court grant him the following relief from Defendant HARTFORD:

a. an order directing HARTFORD to stop holding Mr. Cutway's benefits until the merits of this matter can be resolved by the Court; and

b. All other relief the Court may deem proper.

Dated:  August 23, 2022

/s/ Andrew S. Davis
Davis Law, LLC
PO Box 17887
Portland, ME 04101
P:207.501.5884
F: 888.902.1679
andrew@erisabenefitlawyer.com

6