UNITED STATES DISTRICT COURT

DISTRICT OF MAINE

| | |
|---|---|
| KEVIN CUTWAY, ) | |
| ) | |
| Plaintiff, ) | |
| ) | |
| v. ) | No. 2:22-cv-00113-LEW |
| ) | |
| HARTFORD LIFE & ACCIDENT ) | |
| COMPANY, ) | |
| ) | |
| Defendant. ) | |

## ORDER

Plaintiff Kevin Cutway filed this civil action against Defendant Hartford Life & Accident Company to challenge Hartford's recoupment of overpayments made to him under a group long-term disability program. The matter is before the Court on competing motions for judgment on the administrative record. Pl.'s Mot. (ECF Nos. 45, 45-1); Def.'s Mot. for J. (ECF No. 46).

### BACKGROUND

Hartford Life & Accident Company administers a group long-term disability ("LTD") plan (the "Plan") in which Kevin Cutway participated. Because the Plan is an employee welfare benefit plan, the dispute between the parties is governed by the Employee Retirement Income Security Act ("ERISA"), 29 U.S.C. §§ 1001 *et seq*.

Mr. Cutway began receiving benefits under the Plan in 2016. Under the Plan, LTD benefits are subject to a setoff for "other income benefits," such as workers' compensation awards and social security disability insurance. The manner and timing in which other

income benefits are received by a plan participant cannot always be anticipated in advance. Consequently, it is not uncommon for Hartford to make payment adjustments from time to time, such as when a participant receives a retroactive award from other income sources, or when the details of other income benefits are not initially clear or are misunderstood or even misstated.  When accounts are eventually reconciled, sometimes Hartford will have overpaid LTD benefits.  In that event, the Plan directs that Hartford will recover the overpayment by reducing or offsetting against future benefit payments until the overpayment is reimbursed.  ECF No. 13-9, PageID # 2507 ("Calculation of Monthly Benefit").

When he applied for LTD benefits, Mr. Cutway made an election that Hartford pay him his LTD benefits without any preliminary, estimated deduction for social security payments, understanding that he would need to reimburse Hartford for overpayment in the likely event that he received a retroactive award of social security benefits.  *Id.*, PageID # 2478.  Alternatively, he could have requested that Hartford estimate his likely social security benefit amount and pay him the LTD benefit reduced by the estimated amount, to be adjusted later based on the actual social security award.  *Id.*  In or around May 2017, Mr. Cutway settled a workers' compensation claim for a lump sum payment.  A significant portion of that award was paid to Hartford based on the Policy's offset provision.  Cutway then applied for social security disability benefits, as required by the Policy.  Although events related to past reimbursement scenarios involving Mr. Cutway's LTD benefits do not give rise to the current dispute, they demonstrate that there was good cause for Mr. Cutway to be aware of the need to reimburse overpayments made by Hartford.

In or about April 2019, Mr. Cutway received a notice of award from the Social Security Administration. Through this and other notices, he was informed that he would receive payments of $1,587.00 for January, February, and March of 2019, but also, confusingly, that his monthly benefit would be $49.00 going forward. Evidently, the Social Security Administration's report of the $49.00 figure was the product of some kind of workers' compensation adjustment and was an erroneous accounting.[1] In a phone call with a Hartford representative, Mr. Cutway explained that his social security benefit payment was $1587 per month, but Hartford treated the $49.00 figure as the appropriate amount by which to offset Cutway's LTD benefits going forward, at least pending receipt of a new notice of award from the Social Security Administration stating the proper amount. Hartford's reliance on the notice stating a prospective social security benefit of $49.00 per month was an unfortunate decision, but Hartford did follow up with Mr. Cutway in May 2019 to get more information. At that time, Mr. Cutway said, in effect, that he was not certain what the Social Security Administration was doing with its paperwork. The matter was not resolved and Hartford did not modify the amount of its offset. Based on the circumstances, Mr. Cutway understood and Hartford should have understood that Hartford's utilization of the $49.00 offset would produce an overpayment that Mr. Cutway would eventually need to reimburse.

Meanwhile, in 2020, another concern arose for Mr. Cutway. Specifically, Hartford terminated Cutway's LTD benefits based on surveillance reports, a vocational analysis,

---

[1] Hartford knew about the workers' compensation award, which was already settled, because much of that settlement award went to Hartford to reimburse it for past payment of LTD benefits.

3

and an independent medical record review. Following an administrative appeal, Hartford reinstated Cutway's benefits and awarded a back payment. While Mr. Cutway's LTD benefits were canceled, Hartford was not working to adjust Cutway's LTD benefit based on his social security income. After reinstating Mr. Cutway's benefits in August 2020, Hartford returned to the effort of adjusting Cutway's LTD payment to offset social security benefits. Hartford sent a letter to Mr. Cutway's counsel, asking for a copy of the 2020 cost of living adjustment letter for Cutway's social security disability insurance. In response, Mr. Cutway sent a printout of a social security letter other than the COLA letter, which stated that Cutway's "regular monthly Social Security payment is $74.00." ECF No. 12-9, PageID # 1266. Mr. Cutway's counsel did not provide any other information. Nothing in the record suggests to me that Mr. Cutway did not know that, in fact, his regular monthly payment was considerably more than $74.00.

Hartford returned to the matter in September 2020. This time counsel proposed that Hartford buy out Cutway's LTD claim. Hartford declined the proposal and asked again for confirmation of Cutway's social security benefits. Counsel then essentially provided a statement that the amount remained $49.00.

In December 2021, Hartford determined that the $49.00 representation must be inaccurate, and that Mr. Cutway was in fact receiving monthly checks in the amount of $1,587.00. Using that figure, Hartford issued a notice stating that it calculated a $52,292.00 overpayment. Mr. Cutway, through counsel, filed an administrative appeal. Hartford upheld its determination over appeal, citing the Policy terms.

Mr. Cutway filed this action in April 2022. In his complaint he basically contends that the Court should enjoin Hartford's recovery of the overpayment on equitable grounds. In August 2022, I awarded Cutway preliminary injunctive relief, explaining that likelihood of success was uncertain but that Cutway's claim to avoid Hartford's right to reimbursement "appear[ed to be] colorable" based on precedent suggesting that others had succeeded with claims in somewhat similar actions. Order on Mot. for P.I. at 4 (ECF No. 27). I otherwise awarded injunctive relief based on an assessment that Hartford was the party better able to sustain the burden in regard to payment versus non-payment pending the outcome of the litigation. *Id.* at 4–5. From the cessation of payments in or around December 2021 until the entry of the injunction, Hartford withheld LTD benefits for approximately seven months, reducing the overpayment by roughly $13,000.00.

The Group Policy contains a broad grant that gives Hartford "full discretionary authority to determine eligibility and to construe and interpret all terms and provisions of the [Group Policy]." ECF No. 13-9, PageID # 2526. The Group Policy contains an anti-waiver provision. It reads: "No agent has authority to change or waive any part of [the Group Policy]. To be valid, any change or waiver must be in writing, approved by one of our officers and made a part of the [Group Policy]." *Id.*, PageID # 2648 ("Changes").

## DISCUSSION

Mr. Cutway presses his claim under Section 502(a)(3) of the Employee Retirement Income Security Act ("ERISA"). Complaint ¶ 31. He alleges entitlement to equitable relief in the form of an order declaring the "purported overpayment null and void" and

directing Hartford to repay any amounts withheld on the basis of the overpayment and to forego any future adjustment to his LTD benefits to recover the overpayment. *Id.* at 5.

"Section 502(a)(3) of ERISA enables plan beneficiaries to sue in their individual capacities to 'obtain . . . appropriate equitable relief' (beyond the relief otherwise provided under the statute) to redress violations or enforce any provisions of either ERISA or the plan itself." *Livick v. The Gillette Co.*, 524 F.3d 24, 28 (1st Cir. 2008) (quoting 29 U.S.C. § 1132(a)(3)).[2] However, because the Policy contains a clear grant to Hartford of full discretionary authority to make benefit determinations, the Court's judicial review role is also somewhat circumscribed by a standard of review that asks whether Hartford's decision to recover the overpayment is "arbitrary, capricious, or an abuse of discretion." *United Steel, Paper & Forestry, Rubber, Mfg., Energy, Allied Indus. & Serv. Workers Int'l Union, AFL-CIO/CLC v. Nat'l Grid*, 38 F.4th 279, 285 (1st Cir. 2022).

Based on my review of the record, I am not persuaded that the equities support a judicial decree that Hartford forfeited its right under the policy to offset against future payments the "overpayments" associated with Mr. Cutway's receipt of social security income benefits. The facts that lead me to this assessment are: the terms of the policy, which Hartford properly applied and which are effectively uncontested by Mr. Cutway; a record that supports the finding that Mr. Cutway was informed of and understood or should have understood that he was being overpaid LTD benefits due to his ongoing receipt of

---

[2] The statute reads: "A civil action may be brought . . . by a participant, beneficiary, or fiduciary (A) to enjoin any act or practice which violates any provision of this subchapter or the terms of the plan, or (B) to obtain other appropriate equitable relief (i) to redress such violations or (ii) to enforce any provisions of this subchapter or the terms of the plan." 29 U.S.C. § 1132(a)(3).

6

both unreduced LTD payments and monthly social security benefits; and Hartford's repeated effort to get accurate information and documentation from Mr. Cutway about the monthly payments he received from the Social Security Administration.[3] Although Hartford is not entirely blameless insofar as it administered the Plan such that any reasonable adjuster would have anticipated the creation of a significant overpayment, Hartford's relative lack of care in administration did not exceed Mr. Cutway's own lack of care in the management of his funds.[4] For these reasons, I fail to find a basis in equity to award the relief Mr. Cutway requests, let alone a basis in law to find that Hartford acted arbitrarily or capriciously or abused its discretion.

## CONCLUSION

For the foregoing reasons, judgment in this matter will enter for Defendant. The administrative decision is affirmed and the award of preliminary injunctive relief is lifted. Plaintiff's Complaint is dismissed with prejudice.

SO ORDERED.

Dated this 22nd day of January, 2024

/s/ Lance E. Walker
UNITED STATES DISTRICT JUDGE

---

[3] Hartford's repeated effort to properly adjust the LTD benefit based on accurate documentation of his monthly social security payment undercuts Mr. Cutway's argument for waiver. I also find no basis in the record for a finding of implied waiver. I consequently do not reach the question of the interpretation of the Policy's anti-waiver provision.

[4] The record does not suggest that Mr. Cutway's disability negatively impacts his cognition or ability to manage his funds. The actions of Hartford representatives related to the adjustment of LTD benefits based on other income benefits were not fiduciary in nature. *Livick v. The Gillette Co.*, 524 F.3d 24, 29 (1st Cir. 2008). Thus, the circumstances do not warrant imposing a heightened duty on Hartford.